UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| DAVID RABEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:17CV441-PPS-MGG |
| | ) | |
| NANCY BERRYHILL, | ) | |
| acting Commissioner of the Social | ) | |
| Security Administration | ) | |
| | ) | |
| Defendant. | ) | |

## **OPINION AND ORDER**

David Rabey appeals the Social Security Administration's decision to deny him Social Security disability insurance benefits. An administrative law judge issued a partially favorable decision, finding that Rabey was disabled from January 16, 2014 to February 18, 2015, but that he was not disabled for the period from September 19, 2011 to January 15, 2014. As explained below, I find the ALJ erred by failing to consider the required checklist of factors when he afforded little weight to Rabey's treating physician. Remand is required so that the ALJ may properly consider all of the factors.

My role is not to determine from scratch whether or not Rabey is disabled and entitled to benefits. Instead, my review of the ALJ's findings is deferential, to determine whether the ALJ applied the correct legal standards and whether the decision is supported by substantial evidence. *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010). If substantial evidence supports the Commissioner's factual findings, they are conclusive. 42 U.S.C. § 405(g). "Evidence is substantial if a reasonable person would accept it as

adequate to support the conclusion." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). "Substantial evidence" is more than a "scintilla" of evidence, but it's less than a preponderance of the evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). As such, the review is a light one. But of course, I cannot "simply rubber-stamp the Commissioner's decision without a critical review of the evidence." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

In addition, the ALJ does not have to review every piece of evidence, but must provide a "logical bridge" between the evidence and conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). When an ALJ denies disability benefits but fails to adequately support his conclusions, the decision must be remanded. *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Specifically, the ALJ's reasoning must be sufficiently articulated to permit meaningful review. *See Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). I must consider only the evidence pointed out by the ALJ in his written decision. *See Jelinek*, 662 F.3d at 811 ("[W]hat matters are the reasons articulated by the ALJ.").

One of Rabey's treating physicians was Dr. Debra Sanders. Rabey and Dr. Sanders had a long-term treating relationship beginning in 2008. She treated him on at least 13 different occasions in the three years preceding the ALJ's decision. Unquestionably, Dr. Sanders was a treating physician.

A treating physician's opinion is entitled to controlling weight if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is

2

not inconsistent with other substantial evidence" in the record. 20 C.F.R. § 404.1527(d)(2); *see White v. Barnhart*, 415 F.3d 654, 658 (7th Cir. 2005). This rule takes into account the treating physician's advantage in having personally examined the claimant and developed a rapport, while controlling for the bias that a treating physician may develop with the patient. *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001).

While a treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record, it is in the ALJ's purview to discount the treating physician's opinion. If an ALJ decides not to give controlling weight to a treating physician's opinion, however, he must give "good reasons" for doing so. *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011). Failure to do so is cause for remand.

Importantly, when "an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). The Seventh Circuit has reversed an ALJ's decision to discount a treating physician's opinion without examining the required factors. *E.g.*, *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010).

Dr. Sanders opined that Rabey's pain and other symptoms would interfere with his attention and concentration to perform tasks frequently.  She also opined that he could not walk a city block without pain, and that he would have to get up and move around every 15 minutes.  Rabey would be able to sit and stand/walk for only about two hours in an eight-hour work day.  She also noted he would require a job that allowed him to walk for five minutes every half hour and that allowed him to take a break every hour or two.  She opined that Rabey would rarely be able to lift 10 pounds, twist, crouch or squat, and look up or down or turn his head left or right.  Dr. Sanders further indicated that Rabey would "have good days and bad days due to his impairments." [A.R. at 860-61.]

The ALJ gave little weight to Dr. Sanders' opinion.  In an otherwise thorough opinion, the ALJ did not articulate any of the required factors in discounting the treating physician's opinion. The entirety of the ALJ's analysis recounts portions of the medical evidence in the record and concludes that "[t]aking into account the overall medical evidence as well as the State agency opinion, the undersigned finds Dr. Sanders' opinion unreasonably restrictive during the relevant period." [A.R. at 883-84.] I can reasonably view this explanation of the medical evidence to suggest that the ALJ viewed Dr. Sanders' opinion as inconsistent with the other medical evidence in the record.

But even then, the ALJ failed to acknowledge that Dr. Sanders' opinion that Rabey could not stand or walk for more than two hours in an eight-hour day was

4

actually consistent with the opinion of the consultative examiner Dr. Vemulapalli. Indeed, many of Dr. Vemulapalli's conclusions were similar to those of Dr. Sanders. Like Dr. Sanders, Dr. Vemulapalli also found that Rabey was quite limited in his ability to perform non-sedentary work – for example, he was unable to maintain balance during ambulation while carrying objects less than ten pounds, that his gait was unsteady, his range of motion was "very much limited" in his left hip, and his standing static balance was poor. [A.R. at 766.] These findings are remarkably similar to Dr. Sanders'.

The ALJ, however, viewed them as inconsistent for two reasons: first, Dr. Vemulapalli stated that Rabey walked with a cane, while Dr. Sanders noted that he did not require the use of an assistive device; and second, Dr. Vemulapalli stated that Rabey could not maintain his balance while carrying objects, while Dr. Sanders said that he could occasionally balance. [A.R. at 884.] I fail to see how these opinions are at all inconsistent. Keep in mind that Dr. Sanders opined that Rabey had "good days and bad days." It's entirely possible that on some of his "bad days," Rabey required the use of a cane but didn't need one on his "good days." And it's also consistent that Rabey would be able to occasionally balance, but never balance while carrying anything.

Moreover, in discounting Dr. Sanders' opinion, the ALJ ignored some parts of the other medical evidence that actually supported her opinion and cherry picked the evidence that supposedly showed inconsistency. For example, the ALJ cited Dr. Williams' examination as support for a less restrictive RFC, and presumably took this

5

into account when discounting Dr. Sanders' opinion (although again, there was no direct mention of this evidence when the ALJ discounted Dr. Sanders' opinion). Dr. Williams noted that Rabey had a full range of motion in his hip with no motor deficits in his lower extremities. But Dr. Williams also reported that Rabey "limped in the office today hunched over," was "globally tender about paravertebral muscles," and "straight leg raise on the left is uncomfortable and exacerbated with ankle dorsiflexion." [A.R. at 772.] The ALJ did not address these parts of Dr. Williams' notes.

With respect to Rabey's hip pain, the ALJ noted that he had received injections in his left hip, which, according to the ALJ, Rabey acknowledged relieve his pain. [A.R. at 881.] But at the hearing Rabey testified that the cortisone injections helped relieve the pain for four to six weeks, but his hip still hurts. [A.R. at 61.] The ALJ, however, noted only that his pain was relieved. [A.R. at 881.]

Putting aside whether the ALJ properly viewed Dr. Sanders' opinion as inconsistent with the medical evidence as a whole, and whether that was proper, the ALJ nonetheless failed to consider the other required factors. There is no mention of the length, nature, and extent of Dr. Sanders' relationship with Rabey. Nor is there any consideration of Dr. Sanders' specialty and the types of tests she performed in the context of why the ALJ chose to discount her opinion. And while it is true that the ALJ provided a summary of some of Rabey's visits with Dr. Sanders, the ALJ did not consider how any of the required factors affected his decision to afford little weight to her opinion. For example, there is no reference to the fact that Dr. Sanders treated

6

Rabey at least 13 times in the three years prior to the ALJ's decision and had been treating Rabey since 2008, or that Dr. Sanders maintained communication with Rabey's other doctors, compiling treatment notes from other doctors and attaching them to her opinion as to Rabey's limitations. [A.R. at 860-67.] Simply put, the ALJ did not consider these factors in explaining why he chose to afford little weight – rather than controlling weight – to Dr. Sanders' opinion.

Although I'm not prepared to say that Dr. Sanders' opinion should have been given controlling weight, an analysis of all of the factors may well lead to a different conclusion for the following reasons. Dr. Sanders had a long-term treatment relationship and frequently examined Rabey. For example, in 2011, Rabey sought treatment from Dr. Sanders on a monthly basis. The nature and extent of the treatment relationship also supported giving more weight to Dr. Sanders' opinion. She was well aware of the opinions of other treating physicians and compiled those reports when providing her own medical source statement. With respect to consistency, I have already addressed how Dr. Sanders' opinion was not necessarily inconsistent with the other medical evidence – at least for the reasons identified by the ALJ. Finally, there was supportability in the record for Dr. Sanders' opinion, in particular the evidence from the consultative examiner, as well as other treatment notes.

If the ALJ had given controlling weight to Dr. Sanders' opinion, the RFC determination would have been quite different. As explained above, she said that Rabey's pain and other symptoms would interfere with his attention and concentration

to perform tasks frequently. She also opined that he would have to get up and move around every 15 minutes. Rabey would be able to sit and stand/walk for only about two out of eight hours. She also noted he would require a job that allowed him to walk for five minutes every half hour and that allowed him to take a break every hour or two. Finally, she opined that Rabey would rarely be able to lift 10 pounds, twist, crouch or squat, and turn his head. [A.R. at 860-61.] These limitations are greater than those included in the ALJ's RFC determination. [*See* A.R. at 877.]

In sum, the ALJ is within his purview to discount the opinion of Rabey's treating physician. But the regulations prescribe the analysis that the ALJ must undertake before doing so. If the ALJ still believes that he should discount the opinions of Dr. Sanders—and that is of course the ALJ's prerogative—then he must explain why he is doing so and build a logical bridge between the evidence and his decision by considering all of the factors required under this Circuit's precedent.

Because this ground already requires remand, I will not address Rabey's remaining arguments, but the ALJ should consider and address them as appropriate.

## Conclusion

For the reasons stated above, the ALJ's decision denying benefits is **REVERSED** and this cause is **REMANDED** for further proceedings consistent with this Opinion and Order.

**SO ORDERED**.

ENTERED: July 25, 2018.

   s/   Philip P. Simon
**PHILIP P. SIMON, JUDGE**
**UNITED STATES DISTRICT COURT**